**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Orion Ferrell,

Plaintiff,

v.

Robert J. Macias, Yamasho, Inc., and Mutual Trading Co., Inc.,

Defendants.

_________________________________/

Case No. 25-cv-13099

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A. Stafford

**OPINION AND ORDER GRANTING DEFENDANT MUTUAL TRADING CO., INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT UNDER RULES 12(b)(2) AND 12(b)(6) AND MOTION TO STRIKE UNDER RULE 12(f) [18]**

Plaintiff Orion Ferrell brings this personal-injury and wrongful-death lawsuit against Defendants Robert Macias, Yamasho, Inc., and Mutual Trading Co., Inc. (MTC) following a motor vehicle accident caused by Macias in Jackson County, Michigan that tragically resulted in the death of Alexander Ferrell. Macias caused the accident while making a delivery in Michigan on behalf of his employer, Yamasho, and while driving a delivery truck owned by Yamasho.

MTC moves to be dismissed from the case for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. MTC argues that it is a California corporation and cannot be subjected to jurisdiction in this Michigan lawsuit solely based on its ownership of Yamasho. MTC also argues that, even if it were subject to jurisdiction in Michigan, Plaintiff's Amended Complaint fails to state a claim against it under Rule 12(b)(6) and contains unsupported claims for damages against MTC that should be struck under Rule 12(f).

For the reasons set forth below, the Court GRANTS MTC's motion under Rule 12(b)(2) for lack of personal jurisdiction. Because it dismisses the claims against MTC for lack of personal jurisdiction, the Court need not address MTC's arguments for dismissal under Rule 12(b)(6) and to strike claims against MTC under Rule 12(f).

## I. Background

This lawsuit arises from a motor vehicle accident that occurred on April 24, 2025, in Napoleon Township, Michigan. (ECF No. 6, PageID.58, ¶ 1.) The accident occurred when a truck owned by Defendant Yamasho, Inc. and driven by Defendant Robert Macias crossed over the center line and struck Alexander Ferrell (who was riding a motorcycle) head on. (*Id.*)

Macias left the scene of the accident but was located and stopped by Michigan law enforcement. (*Id.* at PageID.64, ¶¶ 44, 47.) Macias' blood-alcohol level was measured at .168, which is more than twice the legal limit for operating a vehicle. (*Id.* at PageID.58, ¶ 1.)

Macias is a citizen of Illinois. (*Id.* at PageID.60, ¶ 12.) At the time of the accident, Macias was employed by Yamasho and was delivering items to Michigan on behalf of Yamasho in a Yamasho-owned delivery truck. (*Id.* at PageID.58, ¶ 1; *see also id.* at PageID.74, ¶ 101.) Yamasho is incorporated in and has its principal place of business in Illinois. (*Id.* at PageID.60, ¶ 14.) Yamasho was acquired by MTC in February 2023 (*id.* at PageID.73, ¶ 88) and thus was owned by MTC at the time of the accident. MTC is incorporated in and has its principal place of business in California. (*Id.* at PageID.60, ¶ 16.)

Plaintiff brings this diversity action as the personal representative of Alexander Ferrell's estate. (*Id.* at PageID.59, ¶ 2.) Plaintiff filed his initial Complaint on October 1, 2025. (*See* ECF No. 1.) He filed an Amended Complaint on October 6, 2025 (ECF No. 6) after the Court issued an order to show cause regarding the absence of allegations supporting the existence of diversity jurisdiction (ECF No. 5).

The Amended Complaint sets forth six counts:

- Count I asserts that Macias was negligent as a matter of Michigan common law in causing the accident that ultimately resulted in the death of Alexander Ferrell. (ECF No. 6, PageID.69–72, ¶¶ 75–82.)

- Count II alleges that Yamasho and MTC are vicariously liable for Macias' negligence based on Michigan's "respondeat superior" doctrine. (*Id.* at PageID.72–77, ¶¶ 83–123.)

- Count III alleges that Yamasho is liable for negligent entrustment under Michigan law because it permitted Macias to operate the truck that was involved in the accident. (*Id.* at PageID.77–80, ¶¶ 124–139.)

- Count IV alleges that Yamasho is liable for negligent hiring, training, supervision, and retention under Michigan law because it employed Macias. (*Id.* at PageID.81–87, ¶¶ 140–178.)

- Count V alleges that MTC is liable for negligent hiring, training, supervision, and retention under Michigan law based on its purported role as Macias' employer. (*Id.* at PageID.87–93, ¶¶ 179–217.)

- Count VI asserts a wrongful death claim under Mich. Comp. Laws § 600.2922 against all three defendants. (*Id.* at PageID.93–95, ¶¶ 218–232.)

Macias and Yamasho filed answers to the Amended Complaint. (*See* ECF No. 13, 21.) MTC did not answer and instead moved to be dismissed from the case in a motion filed on December 9, 2025. (*See* ECF No. 18.) MTC's motion is fully briefed. (*See* ECF No. 24, 25.)

## II. Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2)

MTC first moves for dismissal under Federal Rule 12(b)(2) on grounds that it is not subject to personal jurisdiction in this lawsuit brought in a federal court located in Michigan. (*See* ECF No. 18, PageID.187–195.)

Personal jurisdiction can be either general or specific. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007)). While general jurisdiction "depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant," specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Id.* at 678–79. "For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state['s] long-arm statute, and constitutional due process." *Id.* at 679 (citing *Air Prods.*, 503 F.3d at 550 and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319–20 (1945)).

As relevant here, Michigan's long-arm statute permits a Michigan court to exercise limited (i.e., specific) jurisdiction over an out-of-state

corporation if (i) the "corporation or its agent" has "transact[ed] . . . any business within the state" and (ii) the plaintiff's claims "aris[e] out of" any of those actions. Mich. Comp. Laws § 600.715(1). If Michigan's long-arm statute is satisfied, a court must also confirm that exercising personal jurisdiction over an out-of-state defendant is consistent with constitutional due process. *See Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 664–66 (6th Cir. 2023). The Due Process Clause requires that a defendant "have certain minimum contacts with" the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Sixth Circuit employs a three-part test to determine whether a defendant has minimum contacts with the forum state:

> First, the defendant must purposefully avail [it]self of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991).

Plaintiff nowhere suggests that MTC is subject to general jurisdiction in Michigan. Plaintiff instead attempts to establish that MTC is subject to specific personal jurisdiction with respect to this lawsuit. (*See* ECF No. 24, PageID.327 (arguing that MTC is subject to "limited personal jurisdiction" in Michigan).) Plaintiff argues that MTC is subject to personal jurisdiction under Mich. Comp. Laws § 600.715(1) because, in its view, MTC engaged in the "transaction of any business within the state" and purposefully availed itself of the opportunity to do business in Michigan. (*Id.* at PageID.327–332.) Plaintiff also argues that MTC operated Yamasho as its "alter ego" and thus Yamasho's contacts with Michigan can be attributed to MTC for purposes of the jurisdictional analysis. (*Id.* at PageID.323–327.) The Court disagrees with Plaintiff on both arguments.

**A. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal due to "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "Motions to dismiss [for lack of jurisdiction] under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). "The plaintiff must first make a prima facie

case [that jurisdiction exists], which can be done merely through the complaint." *Id.* (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id.* (citing *Theunissen*, 935 F.2d at 1459). "Once the defendant has met the burden, it returns to the plaintiff, who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.* (quoting *Theunissen*, 935 F.2d at 1459).

Once the Court is properly presented with a Rule 12(b)(2) motion to dismiss, it has three alternatives to choose from in its discretion: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458.

"The court's choice [among these alternatives] affects the plaintiff's burden." *Malone*, 965 F.3d at 505 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "If the court holds an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence." *Id.* (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272

(6th Cir. 1998)). Where, however, a court relies on written submissions alone, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

A plaintiff meets its burden of making a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between" the defendant seeking dismissal and the forum state. *Id.* (quoting *Provident Nat'l Bank v. Cal. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)); *see also Malone*, 965 F.3d at 504 (applying same standard). "Under these circumstances, [a] court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff . . . and will construe the facts in the light most favorable to the nonmoving party." *Neogen*, 282 F.3d at 887 (citing *Serras*, 875 F.2d at 1214); *see also Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (applying same principles).

**B. MTC's Contacts with Michigan**

Plaintiff does not make a prima facie showing that MTC has transacted business (or purposefully availed itself of the opportunity to

do business) in Michigan through any activity that MTC has itself directed to the forum. Although the Amended Complaint asserts that MTC was "doing business in the County of Jackson, State of Michigan" "[a]t the time of" the accident (ECF No. 6, PageID.61, ¶ 19), Plaintiff's conclusory allegations lack the "reasonable particularity" required by the Sixth Circuit. *Neogen Corp.*, 282 F.3d at 887; *see also, e.g.*, *Russell Brands, LLC v. Beast Holdings, LLC*, No. 1:25-CV-00107-GNS, 2026 WL 2032991, at *4 (W.D. Ky. July 14, 2026) (holding that a statement that defendants "transact 'substantial business'" in Kentucky lacked the "reasonable particularity" required by *Neogen*); *Mattson v. Singh*, No. 3:25-cv-36, 2025 WL 3252298, at *4 (E.D. Tenn. Nov. 21, 2025) (collecting cases that hold that conclusory statements and speculation are not enough to establish a prima facie case of personal jurisdiction); *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (holding that a complaint failed to establish a prima facie case of personal jurisdiction where it relied on "vague and conclusory statements" rather than "well-pleaded facts").[1]

[1] The only non-conclusory allegation in the Amended Complaint that suggests any connection between MTC and the state of Michigan is Plaintiff's allegation that, on the date of the accident, Defendant Macias was wearing a shirt with an "MTC"

Even if Plaintiff's conclusory allegations were sufficient to satisfy his initial burden under the Sixth Circuit's burden-shifting framework for challenges to jurisdiction brought under Rule 12(b)(2), *see Malone*, 965 F.3d at 504, MTC easily overcomes Plaintiff's allegations (and thus carries its own burden) by setting forth specific evidence demonstrating that MTC does not itself transact business in Michigan. MTC submits a declaration by Masatoshi Ohata, who declares under penalty of perjury that, as MTC's president, he has "personal knowledge of MTC's operations and corporate structure." (ECF No. 18-1, PageID.206, ¶ 1.) According to Mr. Ohata's declaration:

- "MTC does not own, lease, or maintain any offices, facilities, mailing addresses, bank accounts, telephone numbers, or

---

logo. (*See* ECF No. 6, PageID.65, ¶ 51.) This allegation does not suffice to demonstrate that MTC transacted business in Michigan or otherwise purposefully availed itself of the opportunity to do business in Michigan. Although the Court must view such allegations in the light most favorable to Plaintiff, *Neogen*, 282 F.3d at 887, Macias' shirt does not provide a sufficient basis to exercise jurisdiction over MTC in Michigan. MTC's President (Masatoshi Ohata) provides important context for Macias' clothing choice in his sworn declaration submitted with MTC's motion. Mr. Ohata avers that "MTC does not require Yamasho's drivers to wear an MTC uniform or any other uniform." (ECF No. 18-1, PageID.210, ¶ 30.) Plaintiff does not contradict Mr. Ohata's assertion in his response. (*See* ECF No. 24.) In short, Macias' clothing choice does not demonstrate the requisite contact between MTC and Michigan. *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (confirming that a court may exercise jurisdiction only if the defendant challenging jurisdiction makes contact with the forum state).

property of any kind in the State of Michigan." (*Id.* at PageID.207, ¶ 7.)

- "MTC does not have any employees, agents, or representatives located in Michigan." (*Id.* at PageID.207, ¶ 8.)
- "[MTC] does not maintain any inventory, warehouses, or distribution centers in Michigan[.]" (*Id.*)
- "[MTC] does not have a registered agent for service of process in Michigan." (*Id.*)
- "MTC does not advertise, solicit business, or conduct marketing specifically directed toward Michigan residents." (*Id.* at PageID.207, ¶ 9.)
- "MTC has not consented to jurisdiction in Michigan, has not registered to do business there, and has not agreed to any forum-selection or choice-of-law provisions selecting Michigan." (*Id.* at PageID.207, ¶ 10.)

Mr. Ohata also asserts that MTC had no connection to the truck involved in the accident and no involvement in sending Defendant Macias to Michigan on the date of the accident. He declares:

- Robert Macias was already employed by Yamasho by the time that MTC acquired Yamasho. (*Id.* at PageID.209, ¶ 23.)
- "MTC did not direct Robert Macias to make deliveries or perform any services on April 24, 2025 or any other day." (*Id.* at PageID.209, ¶ 28.)
- "Yamasho supervisors . . . make driver delivery assignments without consulting MTC." (*Id.* at PageID.209, ¶ 24.)

- "MTC did not own or lease the delivery truck that Robert Macias was driving on April 24, 2025." (*Id.* at PageID.209, ¶ 26.)
- MTC did not contract to insure either Robert Macias or the truck he was driving on April 24, 2025. (*Id.* at PageID.209, ¶ 27.)

Plaintiff does not dispute any of these facts in his response to MTC's motion to dismiss. Plaintiff, rather, appears to suggest that MTC can be found to have transacted business in Michigan based solely on its acquisition of a subsidiary that conducted business in Michigan. (*See* ECF No. 24, PageID.330–331.) He cites no authority to support this argument, however, and case law confirms that ownership of a company that is subject to jurisdiction in Michigan does not, on its own, demonstrate that a parent company has transacted business (or otherwise purposefully availed itself of the opportunity to transact business) in Michigan. *See Dean*, 134 F.3d at 1274 ("[A] company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction."); *LaFarge Corp. v. Altech Env., U.S.A.*, 220 F. Supp. 2d 823, 827 (E.D. Mich. 2002) ("The analysis must focus on what the parent corporation has done, not its subsidiary.").

Plaintiff is not helped by the sole case he cites in support of his argument that MTC "transacted business in" Michigan. (*See* ECF No. 24,

PageID.329–331 (discussing *Att'y Gen. v. Domtar Indus., Inc.*, No. 369930, 2025 WL 2317974 (Mich. Ct. App. Aug. 11, 2025)).) *Domtar* (which is not binding on this Court) addressed whether a plaintiff made a prima facie showing that a Canadian corporation (as opposed to a separate Michigan corporation) "operated as Techni-Comp Environmental at the time of the business dealings" in question. 2025 WL 2317974, at *4. The case involved a question of identity, in other words. Once the court resolved that issue of identity, it had "little difficulty concluding" that the Canadian corporation transacted business in Michigan based on Techni-Comp Environmental's activities in the state. *Id.* at *5 (observing that the Canadian corporation, through Techni-Comp Environmental, "sought out and negotiated business opportunities with a Michigan company, applied for and obtained a composting permit from a Michigan township, and directed a Michigan company's transport of paper waste to a composting site from one Michigan location to another"). There is no evidence that MTC engaged in any similar Michigan-directed activities in this case.

### C. Alter-Ego Theory of Jurisdiction

Plaintiff similarly fails to make a prima facie case that Yamasho was operating as MTC's alter ego such that Yamasho's contacts with Michigan may be attributed to MTC for purposes of the jurisdictional analysis.

The United States Court of Appeals for the Sixth Circuit endorses the "use of the alter-ego theory to exercise personal jurisdiction." *Estate of Thompson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). "The alter-ego theory of personal jurisdiction, in the parent-subsidiary context, provides that 'a non-resident parent corporation is amenable to suit in the forum state'" if (1) its subsidiary is subject to jurisdiction in that state and (2) "'the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Id.* (quoting *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003)).

In applying the alter-ego theory of personal jurisdiction in a diversity action such as this case, a federal court must apply the alter-ego and/or veil-piercing standard that is followed in the state where it

sits. *See id.* (applying Ohio law); *see also Lyngaas v. Curaden AG*, 992 F.3d 412, 420 (6th Cir. 2021) (explaining that—except in labor law and ERISA contexts—state law applies to alter-ego claims); *Franklin Capital Funding, LLC v. Austin Bus. Fin., LLC*, 676 F. Supp. 3d 515, 526, 531, 533–34 (E.D. Mich. 2023) (applying Michigan's veil-piercing standard to the issue of whether a defendant was subject to personal jurisdiction in Michigan).

Because the Court has diversity jurisdiction in this case, Michigan law governs the Court's analysis. Under Michigan law, "there is a presumption that the corporate form will be respected." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Seasword v. Hilti, Inc. (After Remand)*, 449 Mich. 542, 547 (1995)). "This presumption, often called the 'corporate veil,' may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some overriding public policy.'" *Id.* (alteration in original) (quoting *Wells v. Firestone*, 421 Mich. 641, 650 (1984)); *see also Gallagher v. Persha*, 315 Mich. App. 647, 654 (2016) (explaining that alter-ego claims are "an equitable remedy sparingly invoked to cure certain injustices that would otherwise go

unredressed”). Where, as here, a plaintiff seeks to impose “tort liability based on an alleged parent-subsidiary relationship,” Michigan law requires plaintiffs to establish “(1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil.” *Dutton Partners, LLC v. CMS Energy Corp.*, 290 Mich. App. 635, 642–43 (2010) (quoting *Seasword*, 449 Mich. at 548), *appeal dismissed*, 488 Mich. 1048 (2011).

MTC admits that it is the corporate parent of Yamasho, Inc. (*see* ECF No. 18-1, PageID.207, ¶ 11) and nowhere disputes that Yamasho is subject to limited personal jurisdiction in Michigan in connection with this case. The question, therefore, is whether Plaintiff has established a prima facie case for treating Yamasho and MTC as one and the same in the jurisdictional analysis. “A court may find that one entity is the alter ego of another and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff.” *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996) (citing *Nogueras v. Maisel & Assocs. of Mich.*, 142 Mich. App. 71, 86

(1985)); *see also RDM Holdings, Ltd. v. Cont'l Plastics Co.*, 281 Mich. App. 678, 715 (2008) (applying same standard).

In attempting to establish jurisdiction over MTC using an alter-ego theory, Plaintiff focuses on the first prong of Michigan's veil-piercing standard—i.e., whether Yamasho operated as a "mere instrumentality" of MTC. To determine whether one corporate entity is the "mere instrumentality" of another at the first step of this test, courts consider the following factors: "undercapitalization of the corporation, the maintenance of separate books, the separation of . . . finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704–05 (6th Cir. 1988); *see also Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 716 (2014) (setting forth the same factors).

Plaintiff's Amended Complaint alleges that Yamasho "was used as an alter-ego of" MTC "[a]t all relevant times" (ECF No. 6, PageID.73, ¶ 92) and was "merely an instrumentality of" MTC (*id.* at PageID.74, ¶ 99). Plaintiff also makes several factual allegations solely "[u]pon information and belief," including that MTC provided Yamasho's "credit

and capital" (*id.* at PageID.73–74, ¶ 95) and "determined" Yamasho's "policies and decisions" (*id.* at PageID.74, ¶ 98).

MTC attempts to counter these allegations by providing a declaration by its president, Mr. Ohata. (*See* ECF 18-1.) Mr. Ohata avers:

- "MTC has not provided Yamasho with capital since the acquisition." (*Id.* at PageID.208, ¶ 14.)
- MTC and Yamasho do not share and have never shared corporate office space. (*Id.* at PageID.208, ¶ 15.)
- Yamasho's sales revenue accounts for a "small percentage" of MTC's total revenue. (*Id.* at PageID.208, ¶ 16.)
- MTC and Yamasho "maintain separate accounting records locally." (*Id.* at PageID.208, ¶ 17.)
- MTC and Yamasho maintain separate bank accounts. (*Id.* at PageID.208, ¶ 18.)
- MTC and Yamasho have separate boards of directors. (*Id.* at PageID.208, ¶ 20.)
- "MTC and Yamasho do not share employees." (*Id.* at PageID.209, ¶ 21.)
- "MTC does not dictate or control day-to-day business decisions at Yamasho. For example, Yamasho supervisors make hiring decisions, train and supervise their employees, and make driver delivery assignments without consulting MTC." (*Id.* at PageID.209, ¶ 24.)
- "MTC is not the sole source of materials sold and distributed by Yamasho." (*Id.* at PageID.209, ¶ 25.)

- "MTC does not own or lease any delivery trucks or employ any delivery drivers used in Yamasho's business." (*Id.* at PageID.209, ¶ 27.)
- "MTC did not direct Yamasho to deliver any products, supplies, or equipment in Michigan on April 24, 2025 or any other day." (*Id.* at PageID.209, ¶ 29.)

Plaintiff's response to MTC's submission points to instances in which company websites and social media accounts emphasized the connections between MTC and Yamasho.[2] (*See* ECF No. 24, PageID.315–318.) Plaintiff argues that these materials demonstrate "systematic branding" and show that "MTC itself has taken great pains to portray Defendant Yamasho and itself as one and the same in its marketing and sales materials." (*Id.* at PageID.325.) Plaintiff also notes that MTC and Yamasho share a president (Mr. Ohata) along with 401(k) plans. (*See id.*)

Plaintiff's response also relies heavily on the affidavit of Ariana Forester, who previously worked for Yamasho. (*Id.* at PageID.416–418; *see also id.* at PageID.319–320, PageID.325–327.) Ms. Forester's affidavit

[2] None of the documentary evidence referenced in Plaintiff's response is authenticated through a declaration or otherwise. Screenshots of some, but not all, of the relevant webpages or social media accounts were provided to the Court as exhibits appended to the same PDF as Plaintiff's brief. (*See, e.g.*, ECF No. 24, PageID.391–401.) Plaintiff otherwise provided screenshots with accompanying URLs in the body of its brief. (*See id.* at PageID.315–316.)

states that she worked as the "out-of-state accounts receivable clerk in the accounting department" of Yamasho's facility in Elk Grove, Illinois from September 2022 until some unspecified time after MTC acquired Yamasho. (*Id.* at PageID.417, ¶ 2.)

Ms. Forester's affidavit sets forth her perception of what changed at Yamasho after the company was acquired by MTC. She states: "After MTC took over Yamasho, MTC was in charge of Yamasho's operations. They were not merely providing support or guidance—they controlled the company." (*Id.* at PageID.417, ¶ 4.) Ms. Forester asserts that, among other things, MTC "replaced Yamasho personnel with MTC employees from California in key positions" (*id.* at PageID.417, ¶ 5) and "sent people from California who would come to the Elk Grove Village office every two weeks to go through our books and check our financial records" (*id.* at PageID.417, ¶ 8). Ms. Forester further asserts that "employee paychecks changed" and began to include the "MTC logo" and stated "something like MTC DBA Yamasho" instead of "Yamasho." (*Id.* at PageID.418, ¶ 10.)

Ms. Forester also describes what she perceived to be MTC's involvement with Robert Macias (the individual Defendant in this case who was already employed by Yamasho by the time the company was

acquired by MTC). She claims that "Mr. Ide" (a "high level executive" who was "brought in" by MTC") and "other representatives" of MTC "came to the office, met with Robert Macias, and took away [his] corporate credit card because he made an unauthorized charge." (*Id.* at PageID.417, ¶¶ 6, 9.) She "believe[s] this was shortly after MTC acquired Yamasho." (*Id.* at PageID.417, ¶ 9.) She further states that "[w]hen MTC came in with its managing team, they changed Robert Macias's job title or 'label' from 'driver' to 'warehouse.'" (*Id.* at PageID.418, ¶ 11.) She "understood this change was made because MTC did not want it to look like a family member, Joe Macias, was directly supervising his brother Robert." (*Id.*) "This occurred approximately two years before . . . April 24, 2025." (*Id.*)

MTC's reply challenges Ms. Forester's account as "inherently unreliable for several reasons." (ECF No. 25, PageID.433.) MTC bases its challenge on information provided in a supplemental declaration by Mr. Ohata, who claims personal knowledge of the relevant facts based on his roles as the president of both MTC and Yamasho. (ECF No. 25-1, PageID.438, ¶ 1.) MTC notes that Ms. Forester failed to disclose that she is Joe and Robert Macias' niece and argues that this familial relationship "is a material fact that goes to her credibility and potential for bias." (ECF

No. 25, PageID.433; *see also* ECF No. 25-1, PageID.438, ¶ 3 (statement by Mr. Ohata that "[a]s part of her employment with Yamasho, Ms. Forester listed Joe Macias as a reference on her personal information sheet and identified him as her uncle").) MTC also notes Ms. Forester's failure to disclose her July 2024 resignation from Yamasho and her filing of a contested administrative claim for unemployment benefits following her resignation, suggesting that these are also "material facts that go to her credibility." (ECF No. 25, PageID.433; *see also* ECF No. 25-1, PageID.439, ¶¶ 4–5 (information provided by Mr. Ohata regarding Ms. Forester's resignation and administrative claim).)

MTC further argues that Ms. Forester's affidavit "is contradicted by objective evidence." (ECF No. 25, PageID.433.) MTC asserts that "none of Ms. Forester's paycheck's bore MTC's name, logo[,] or otherwise referenced MTC." (*Id.* at PageID.434.) MTC bases this claim on Mr. Ohata's supplemental declaration that "[n]one of Ms. Forester's Yamasho paychecks reference MTC." (ECF No. 25-1, PageID.439, ¶ 6.)

MTC also questions how Ms. Forester's claims about MTC's "control" over Yamasho could be based on personal knowledge given Ms. Forester's "low-level position" at Yamasho. (ECF No. 25, PageID.434.) It

argues that Mr. Forester's affidavit lacks a "foundation for her claims regarding . . . MTC's purported control over Yamasho, generally." (*Id.*)

Finally, MTC argues that Ms. Forester's affidavit is "irrelevant to the personal jurisdiction analysis." (*Id.*) MTC submits that April 24, 2025 is the "relevant date for establishing jurisdiction" because it is when the accident giving rise to this lawsuit occurred. (*Id.*) MTC then argues that Ms. Forester "cannot possibly have personal knowledge of the operations at Yamasho or MTC at the time of the accident" because she resigned her position with Yamasho in July 2024. (*Id.*)

Ultimately, the Court need not address the fact-intensive and credibility issues raised by the parties' competing submissions and arguments regarding whether Yamasho was a mere instrumentality of MTC. Resolving these issues would require, among other things, the Court to hold an evidentiary hearing to assess Ms. Forester's credibility and probe the extent of and basis for her personal knowledge of the relevant facts. *See SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013) ("An evidentiary hearing may be conducted if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution."

(quoting *Am. Greetings*, 839 F.2d at 1169)). The Court need not engage in that time-consuming and burdensome exercise because, as MTC notes in its reply (*see* ECF No. 25, PageID.435–436), Plaintiff nowhere alleges (and, indeed, nowhere argues) that MTC used Yamasho "to commit a fraud or wrong."

Under Michigan law, it is not "sufficient to show merely that [two companies] are alter egos"—rather, Michigan requires a plaintiff to provide evidence that a "defendant was somehow abusing its corporate shield for its own purposes" before a court may pierce the corporate veil and hold a parent company liable for its subsidiary's actions. *Dutton Partners*, 290 Mich. App. at 644–45 (holding that a trial court erred in failing to grant summary disposition to a parent company on a claim for alter-ego liability because, even though legitimate questions existed as to whether its subsidiary was a "mere instrumentality" of the parent, there was no evidence that the parent "merely used [its subsidiary] to commit fraudulent or otherwise wrongful acts"). Courts in the Eastern District of Michigan have dismissed claims against parent companies that fail to make this required showing, including in the context of motions under Rule 12(b)(2). *See also Flagstar Bank, FSB v. Centerpointe Fin., Inc.*, No.

2:10-cv-14234, 2011 WL 2111984, at *6 (E.D. Mich. May 26, 2011) (concluding for purposes of a Rule 12(b)(2) motion that a plaintiff failed to pierce the corporate veil as to officers of a company where it failed to demonstrate that the alleged "fraud or wrongdoing" by the company "resulted from an abuse of the corporate form"); *see also ComSpec Int'l, Inc. v. Uniface B.V.*, No. 2:20-cv-10067-TGB-EAS, 2021 WL 4169726, at *4 (E.D. Mich. Sept. 24, 2021) (dismissing breach-of-contract claim against a non-contracting party under Rule 12(b)(6) because there were "no allegations regarding how Uniface B.V. was used by Uniface USA 'to commit a fraud or wrong'" and thus an insufficient basis to pierce the corporate veil).

Here, Plaintiff's own evidence shows that (1) Yamasho is one of multiple companies that were acquired by MTC in 2023 (ECF No. 24, PageID.316, PageID.403–406) and (2) after being acquired by MTC, Yamasho continued to conduct a legitimate business as a wholesale supplier of Japanese food and beverages out of its Illinois facilities (*id.* at PageID.398, PageID.401, PageID.403–404, PageID.417–418). Such facts bear no resemblance to instances in which parent companies have been found to use subsidiaries for an improper purpose as a matter of Michigan

law. *See In re Flint Water Cases*, 584 F. Supp. 3d 383, 404–405 (E.D. Mich. 2022) (observing that "[m]ost often, this element is satisfied by showing a breach of contract by the subsidiary" and collecting cases in which such a breach was found sufficient).

In short, even if Plaintiff were able to show that Yamasho was a "mere instrumentality" of MTC, the evidence does not suggest any abuse of Yamasho's separate corporate form by MTC that would justify piercing the corporate veil in connection with an accident that was caused by a Yamasho employee who was hired by Yamasho before its acquisition by MTC. (*See* ECF No. 24, PageID.418, ¶ 11.)

**D. Jurisdictional Discovery**

Plaintiff asks the Court for an opportunity to conduct jurisdictional discovery if the Court finds that Plaintiff has not yet established personal jurisdiction over MTC. (*See* ECF No. 24, PageID.332–333.) Plaintiff relies solely on a 2003 decision by the United States Court of Appeals for the Third Circuit in making this request. (*See id.* at PageID.333 (quoting *Toys "R" Us, Inc. v. Step Two, SA*, 318 F.3d 446, 456 (3d Cir. 2003)).) He does not, however, cite any authority to suggest that the United States Court of Appeals for the Sixth Circuit has endorsed the Third Circuit's

view (as articulated in *Toys "R" Us*) that jurisdictional discovery should be permitted whenever a plaintiff's claim is not "clearly frivolous." 318 U.S. at 456.

In contrast to the Third Circuit's approach, the Sixth Circuit holds that a district court has discretion to grant or deny jurisdictional discovery as well as to limit the scope of any discovery that is taken. *See Theunnisen*, 935 F.2d at 1465. The Sixth Circuit also holds that a plaintiff who seeks jurisdictional discovery must, "at a minimum, . . . give the district court 'a reasonable basis to expect that . . . discovery would reveal' evidence that supports the claimed jurisdiction" before such a request may be granted. *C.H. ex rel. Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (quoting *Chrysler Corp. v. Fedders Corp.*, 543 F.2d 1229, 1240 (6th Cir. 1981)) (concluding that a district court did not abuse its discretion in declining a request to grant jurisdictional discovery before dismissing a case for lack of subject-matter jurisdiction).

The Court declines Plaintiff's request for jurisdictional discovery. Plaintiff has not provided a reasonable basis to believe that he would obtain facts through discovery that could withstand MTC's motion to dismiss for lack of personal jurisdiction. *See Nottingham-Spirk Design*

*Assocs., Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 571–72 (N.D. Ohio 2022) (denying a request for jurisdictional discovery where the plaintiff failed to "identif[y] with any specificity how discovery might support a finding of personal jurisdiction"). Plaintiff argues that discovery is needed because Mr. Ohata's declaration in support of MTC's motion (ECF No. 18-1) "presents an incomplete picture of the relationship between Defendants MTC and Yamasho." (ECF No. 24, PageID.333.) This may or may not be true, but it does not help Plaintiff. As set forth above, the Court is dismissing MTC for lack of personal jurisdiction because Plaintiff fails to make a prima facie showing that MTC was "somehow abusing its corporate shield for its own purposes." *Dutton Partners*, 290 Mich. App. at 644–45. Plaintiff nowhere explains how additional discovery would help it demonstrate that MTC is abusing Yamasho's separate corporate form, which is a separate inquiry from whether MTC controls Yamasho.

In sum, Plaintiff fails to set forth a prima facie case for exercising personal jurisdiction over MTC in this case. MTC itself has no contacts with Michigan and Plaintiff fails to provide a sufficient basis to pierce the corporate veil such that Yamasho's contacts with Michigan may be

attributed to MTC. Because the Court finds that it lacks personal jurisdiction over MTC, it need not address (1) whether the Amended Complaint states a claim against MTC upon which relief may be granted or (2) MTC's unopposed request (*see* ECF No. 24, PageID.313 n.1) to strike certain material from Counts I, III, and IV of the Amended Complaint.

## III. Conclusion

For the reasons set forth above:

1. Defendant Mutual Trading Co., Inc.'s Motion to Dismiss the Amended Complaint Under Rules 12(b)(2) and 12(b)(6) and Motion to Strike Under Rule 12(f) (ECF No. 18) is GRANTED to the extent MTC seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2).

2. Mutual Trading Co., Inc. is DISMISSED from this lawsuit.

3. The Court need not reach Mutual Trading Co., Inc.'s alternative requests to have the claims asserted against it dismissed under Rule 12(b)(6) and to strike material under Rule 12(f). The Court therefore denies those requests as moot.

IT IS SO ORDERED.

Dated: August 17, 2026
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 17, 2026.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager